MERCHANTS & FARMERS BANK OF STARKSVILLE *v.* NORMENT.

[76 South. 482, Division B.]

1. EQUITY. *Decree. Amendment. Evidence.*
   Under section 1016, Code 1906, providing that, when there shall be among the records of the proceedings any docket or memoranda by the chancellor whereby a judgment or decree may be safely amended, it shall be the duty of the court to amend such judgment or decree, it was not error for a trial court to overrule an application to amend a final decree, where although the former chancellor of the district stated in testifying that he made a pencil memorandum of his calculations at the time he prepared the final decree, these alleged notes of the chancellor were not made a part of the petition as an exhibit or otherwise and were not in the possession of the witness at the time he testified and were not in court when the motion was heard and had never been "among the record of the proceedings."

2. BANK AND BANKING. *Action against president. Evidence. Agreement dismissing appeal.*
   Where the president of a bank had taken up his own loan with the money of the bank with knowledge of the infirmities of the title and the bank had been unable to realize in full on the loan because of the title set up by others, an agreement to dismiss the appeal from the decree adjudging that the bank had knowledge of the infirmities in the title was admissible in a suit in which the bank sought to hold the president liable for making such loan.

3. SAME.
   In such case it was error to attach to the decree in the suit, by
   which the bank sought to hold the president liable for making the
   loan the condition that so long as the former suit between the
   bank and the others was pending, no liability should rest or
   be vested.

4. SAME.
   In such case the decree in the suit between the bank and the others,
   adjudging that the bank had knowledge of the infirmities in the
   title, was admissible in the suit in which the bank sought to
   hold the president liable for making the loan.

5. BOND TO RELEASE MONEY. *Judgment.*
   Where in a suit by a bank against its president the bank prayed
   in its bill that the money of its president in the bank should
   be applied to the indebtedness due it by him and the president
   had given a bond for the release of this money, a decree was er-
   roneous which failed to give judgment on such bond.

APPEAL from the chancery court of Oktibbeha coun-
ty.

HON. A. J. MCINTYRE, Chancellor.

Suit by the Merchants' & Farmers' Bank of Starks-
ville against James W. Norment. From a decree overrul-
ing complainant's petition to correct the decree for com-
plainant and from the decree sought to be corrected, it
appeals.

*Montgomery* v. *Bell,* No. 1984, in Oktibbeha county
chancery court, indirectly involved in this cause, was a
suit brought by certain of the heirs of Mrs. Jenny Bell
against appellant, the Merchants' & Farmers' Bank of
Starkville, Miss., and others, assailing a deed of trust
held by that bank on seven hundred and twenty acres of
land involved in that suit. Before the death of Mrs.
Jenny Bell she and her husband. M. C. Bell, executed a
deed of trust to Mrs. Gertrude Carroll, the wife of Judge
T. B. Carroll, who was her agent, to secure a certain sum
of money. Mrs. Jenny Bell and her husband both died
before the money was paid, the former leaving nine heirs
at law by her husband, M. C. Bell, and M. C. Bell also
having two other children by a former wife. Most of the

children of Jenny Bell were minors and dependent on their elder brothers for their support, and Judge Carroll suggested that his wife's mortgage be foreclosed and the title vested in the two older brothers for the benefit of the younger children. This was done, and the title vested in the older brothers, E. B. and R. M. Bell, who executed another mortgage for the money secured on the land. In the meantime Mrs. Cowan, the grandmother of Jenny Bell's children, having some money of her own, paid Judge Carroll part of the money due his wife, and entered into a written agreement to pay the remainder if time should be given them. Later on, after this agreement was executed, E. B. and R. M. Bell procured J. W. Norment to take up the mortgage held by Judge Carroll for his wife, Mrs. Cowan having died without paying it in full. Judge Carroll notified Mr. Norment that E. B. and R. M. Bell were not the real owners of the land, but only tenants in common and holders of the legal title for the minor children of Jenny Bell, and gave him a copy of the agreement with Mrs. Cowan. Mr. Norment later became the organizer and first president of the Merchants' & Farmers' Bank, appellant. And afterwards, about 1908, he made a loan of the bank's money, he being the attorney and creditman of the bank, to W. C. Bell on the seven hundred and twenty acres of land, W. C. Bell being the brother of E. B. and R. M. Bell, to whom they had deeded the land for a nominal consideration of one hundred dollars, which was never paid. Mr. Norment, failing in health, went to New Mexico, and afterwards the bank's other officers who succeeded him, having no knowledge of the infirmity of the title, renewed the loan to W. C. Bell for a larger sum of money. The bank was about to foreclose the loan given them by W. C. Bell, who had full notice of the claims of the minor heirs, when the minor heirs brought suit against the bank, asking that its security be limited to the small interest in the land of E. B., R. M., and W. C. Bell, and that the land be sold for division. Much testimony was taken *pro* and *con*, Mr. Norment de-

nying knowledge of all interest of minor heirs, but Chancellor ROBINS, who decided the cause, held that the bank was charged with full knowledge of the infirmities of the title through its legal functionary and president, James W. Norment. In the decree the bill was sustained, and the interests in the lands owned by E. B., R. M., and W. C. Bell was set apart to the bank and sold under its mortgage for the sum of four hundred dollars, leaving a large indebtedness due it.

II. Suit was immediately brought by the Merchants' & Farmers' Bank in the chancery court of Oktibbeha county against James W. Norment, then living in New Mexico, where he had gone for his health, which cause is No. 2153 on the chancery docket of Oktibbeha county. The bank also had on deposit at the time nearly five hundred dollars to the credit of J. W. Norment, which it asked to be applied to the indebtedness due it by him. The bank charged that James W. Norment, while its president and loan officer and attorney, with full knowledge that W. C. Bell was only a tenant in common of the said seven hundred and twenty acres of land, made a large loan to him secured by the land, using the bank's money, a large portion of which was lost; that with this money Mr. Norment paid himself off a personal loan he had made W. C. Bell, secured on this land, with full knowledge of the minors' interests therein. In this loan the papers in evidence in the cause of *Montgomery* v. *Bell,* No. 1984, were introduced at the hearing which was had before Chancellor Lamb. Before the two years expired after the final decree in cause No. 1984 the bank filed an appeal bond, which was a very short while before the trial in the present suit; accordingly Judge LAMB, who had succeeded Judge ROBINS, as Chancellor, ruled out the record and papers in *Montgomery* v. *Bell* because he said that cause was not finally settled, establishing the loss by the bank, since an appeal was pending. The bank, so as to avoid this objection, immediately entered into an agree-

ment with the attorneys of the Bell heirs who were com-
plainants in that suit, and by agreement dismissed the
appeal. In the trial of the *Merchants' & Farmers' Bank*
v. *James W. Norment* involved in this appeal much addi-
tional testimony was taken besides that used in the cause
of *Montgomery* v. *Bell,* but James W. Norment did not
take the stand in the latter trial. Pending the litigation
Mr. Norment gave bond for the money deposited in the
Merchants' & Farmers' Bank and drew it out, and also
by his bond relieved all the garnishees who were parties
to the bill and who were his debtors from answering, and
by agreement the bond was to stand in the stead of the
money in the bank and to protect the complainant bank to
the extent the garnishees were indebted to Norment.
After the cause was heard and argued before Chancellor
Lamb, he took the case under advisement, and rendered a
decree in vacation only a day or two before he went out
of office, which decree he prepared himself, and which the
counsel on neither side had seen, and by which decree he
sustained the bill of the *Merchants' & Farmers' Bank* v.
*Norment,* rendering a decree in favor of the bank for
one hundred and ninety-four dollars and sixty-six cents.
Judge LAMB in rendering his decree also conditioned the
recovery of the one hundred and ninety-four dollars and
sixty-six cents, upon the Merchants' & Farmers' Bank ap-
pearing in the supreme court and there dismissing the ap-
peal it had taken in the cause of *Montgomery* v. *Bell,* No.
1984. He made no disposition of the five hundred dollars
in appellant bank, nor did he mention the bondsmen on
Norments' bond.

III. Complainant bank, learning of this oversight of
Judge LAMB, filed a petition, to which it made all the
bondsmen on the forthcoming bond given by Norment
parties, giving them notice as well as Norment, to ap-
pear at the next term of court and show cause why the
mistake of Judge LAMB in leaving out the five hundred
dollars from his decree should not be corrected, and

why the bondsmen should not in the decree be made to answer for the judgment which was rendered against Norment by Chancellor LAMB and for which they gave the bond. At the hearing of this petition Judge A. J. McINTYRE was chancellor, and Judge T. L. LAMB, the former chancellor, was a witness. He testified to his oversight, showing that the papers were not present before him, and he explained that he did not render a decree for appellant for the five hundred dollars because he thought it still had the money in its own hand, and accordingly he charged it with it. He also stated that the calculation by which he reached the amount, for which he gave a decree for complainant, was then at home among his papers, that that was not present in court, but he testified that it showed that the five hundred dollars was charged up to the bank, and a decree was not given for the five hundred dollars because it was supposed the bank had it. Judge McINTYRE overruled the petition to correct the decree in any part, and the bank appealed from his decree, overruling the petition to correct Judge LAMB's final decree and also from the final decree in which he rendered judgment in favor of the bank against J. W. Norment for only one hundred and ninety-four dollars and sixty-six cents. The testimony heard in the original suit of *Montgomery* v. *Bell* and the suit now appealed to which the record in that case was made an exhibit constitutes five large bound volumes, and involves much conflicting evidence *pro* and *con,* a longer abstract of which it is deemed unnecessary to give, it being sufficient to state that Chancellor ROBINS found in *Montgomery* v. *Bell,* No. 1984, that the bank was charged with full knowledge of the infirmities of title in the seven hundred and twenty acres of land which the court held was in the mind of J. W. Norment when, while representing the bank, he made the loan. In the present suit Chancellor LAMB decided for the complainant, the Merchants' & Farmers' Bank, and

against James W. Norment, and found that he should be responsible for a portion of the bank's loss which it had suffered, because he had taken up his own loan with the bank's money, with knowledge of the infirmities of the title. The evidence *pro* and *con* on these various issues was resolved by the decree in favor of the appellant the Merchants' & Farmers' Bank.

*Leftwich & Tubb,* for appellant.

*Gates T. Ivy,* for appellee.

STEVENS, J., delivered the opinion of the court.

There was no error on the part of the trial court in overruling the application to amend the final decree. The petition was filed under section 1016, Code of 1906, and the only testimony in support of the petition was the oral testimony of the former chancellor of the district. It is true the chancellor, in testifying, stated that be made a pencil memorandum of his calculations at the time he prepared the final decree, but these alleged notes of the chancellor were not made a part of the petition as an exhibit or otherwise. They were not in possession of the witness at the time he testified, and were not in court at the time Chancellor McINTYRE heard the motion. It does not appear that this memorandum had ever been "among the records of the proceedings." The chancellor was justified in declining to sustain the motion to correct the final decree; at least we cannot reach the conclusion that he was manifestly wrong.

On the merits, the decree appealed from should be reversed, and the cause remanded for a new trial. Error was committed in excluding the agreement dismissing the appeal in cause No. 1984, especially in view of the ruling of the court making the final decree that was rendered in the present suit conditioned on the prosecu-

tion of the appeal in the former case, No. 1984. It was, in our judgment, error to attach any conditions whatever to the decree finally rendered by the court, to the effect, so long as an appeal of the former suit was pending, "that no liability shall rest or be vested by this decree, because there could be no measure of liability in this case so long as that case is pending." Recovery in the instant case should be based upon the proof, and the decree, as to its terms, should be definite and final. We see no error in permitting the record in cause No. 1984 to be introduced as a part of the evidence in the present case.

It appears to us that the learned chancellor before whom this cause was tried resolved the facts in favor of appellant, but that his decree fails to take account of the four hundred and eighty-three dollars and ten cents to the credit of appellee Norment in the bank at the time this suit was filed. After the institution of this suit, appellee had given bond, and on the faith of this bond had been permitted to withdraw these funds. The final decree does not mention this bond, and we see no reason why the chancellor did not permit recovery on the bond. In the oral testimony of the chancellor taken upon the motion to correct the decree, he states that:

"He credited Mr. Norment with five hundred dollars that was shown by the proof to have been in the bank; . . . there being no bond of any kind in reference to this matter introduced in the trial or my attention called to the fact."

Of course, this oral testimony of the chancellor is not controlling here in our analysis of the facts, but in a court of equity it should at least point us to the testimony and prompt us not too strongly to indulge the presumption that the decree of the chancellor in the present case is correct. Here the chancellor frankly admits a mistake in calculation. It is not clear just how the chancellor arrived at the sum of one hundred and

ninety-four dollars and sixty-six cents, the amount of the final decree. Even though the chancellor had intended to award recovery for only one hundred and ninety-four dollars and sixty-six. cents, appellant was entitled to a judgment upon the bond for this amount. The bond was given in consideration of a release of the garnishments, and the express condition of the bond is that appellee "shall settle and pay and discharge and comply with any and all judgments and decrees that may be rendered against him in the aforesaid cause." The decree appealed from will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*